# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BANK OF AMERICA, N.A.,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:11-cv-734-Orl-22GJK**

**ROBERT G. DELLO RUSSO,**
**STEPHEN ROMINGER,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST DEFENDANT STEPHEN ROMINGER (Doc. No. 113)** |
| **FILED:** | **April 2, 2013** |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part.** |

### I. BACKGROUND.

The facts of the case are thoroughly set forth in the District Court's order on Bank of America, N.A.'s (the "Plaintiff") motion for summary judgement and are adopted herein. Doc. No. 40. On August 23, 2012, the Clerk entered judgment against Stephen Rominger (the "Defendant") in the amount of $500,000.00. Doc. No. 52.[1] On April 2, 2013, Plaintiff filed a

---

[1] The case is on appeal as to Defendant Robert G. Dello Russo. Doc. No. 136.

Renewed Motion for Attorneys' Fees and Costs Against Defendant (the "Motion"), requesting an award of $39,711.00 in attorneys' fees and $1,319.42 in costs pursuant to the Guaranty Agreement at issue in this case (the "Guaranty") (*see* Doc. No. 114-1).  Doc. No. 113.  In support of the Motion, Plaintiff attaches the affidavits of Christopher P. Schueller, Esq. (Doc. No. 114 at 3-10) and Blake J. Delaney, Esq. (Doc. No. 115 at 3-7), as well as a detailed time sheet (Doc. No. 114-2 at 1-7), a detailed description of the costs requested (Doc. No. 114-2 at 8), and the Guaranty (Doc. No. 114-1 at 1-9).

In the Motion and affidavits, counsel for Plaintiff states that Plaintiff verbally agreed to the pay counsel a flat rate of $350.00 per hour for work performed by all attorneys in this matter and, although never discussed with Plaintiff, counsel normally bills Plaintiff $160.00 per hour for work performed by paralegals.  Doc. Nos. 113 at 5-6; 114 at 4 ¶¶ 6-7; 115 at 4-5.  Due to a glitch in counsel's billing system, counsel inadvertently billed Plaintiff $260.00 per hour for work performed by one attorney on the case, Leslie Matthews, Esq. Doc. Nos. 113 at 6 n. 1; 114 at 5 ¶ 9.  Because Plaintiff was only billed $260.00 per hour for Ms. Matthews work, Plaintiff is only requesting an hourly rate of $260.00 for Ms. Matthews.  *Id.*   In the Motion and affidavits, Plaintiff's counsel states that they performed a total of 119.7 hours of work on the case.  Doc. Nos. 113 at 9; 114 at 7; 115 at 6.

The table below reflects the attorneys and paralegals who performed the work, the hourly rates requested, and the number of hours expended:

| Attorney/Paralegal | Hours | Rate | Total |
| --- | --- | --- | --- |
| Christopher Schueller, Esq. | 2.3 | $350.00 | $805.00 |
| Timothy Palmer, Esq. | 0.6 | $350.00 | $210.00 |

| Maureen Bass, Esq. | 30.0 | $350.00 | $10,500.00 |
| Blake Delaney, Esq. | 38.9 | $350.00 | $13,615.00 |
| Michael Reyen, Esq. | 21.4 | $350.00 | $7,490.00 |
| Leslie Mathews, Esq. | 25.9 | $260.00 | $6,734.00 |
| Angela Brandt, Paralegal | 0.6 | $160.00 | $96.00 |
| **TOTAL** | **119.7** | | **$39,450.00** |

Doc. Nos. 114 at 6-7; 115 at 4-5. As shown above, based on the hourly rates requested and hours detailed in the Motion and attached affidavits, Plaintiff has miscalculated the total amount of attorneys' fees requested. *Compare* table *with* Doc. Nos. 113 at 3; 114 at 6-7; and 115 at 4-5. Plaintiff requests $39,711.00 in attorneys' fees, but the actual calculation of hourly rates multiplied by the number of hours equals $39,450.00. *Id.*[2]

Plaintiff requests $1,319.42 in costs, representing $725.00 in costs under 28 U.S.C. § 1920; and $544.42 in costs under the Guaranty, as well as Section 9.2 of the original Loan Agreement (*see* Doc. No. 1-3 at 1-2). Doc. No. 113 at 10. More specifically, Plaintiff requests $350.00 for the filing fee and $425.00 in service of process fees under Section 1920; and $296.00 for "filing fees" related to the assignment of the Loan Agreement to Plaintiff, and $248.42 for a lien search related to the American Companies. Doc. No. 114-2 at 8.[3] Thus, Plaintiff requests an award of $1,319.42 in costs.

---

[2] Because the Court can make the correct calculation based on the papers provided, denying the Motion based upon Plaintiff's miscalculation would not conserve judicial resources or serve the interests of justice.

[3] *See* Doc. No. 40 at 1-5 (providing a detailed description of the facts related to the American Companies, the Guaranty, and the Loan Agreement).

3

On April 16, 2013, Defendant filed a response (the "Response"). Doc. No. 120. Defendant does not dispute Plaintiff's entitlement to attorneys' fees and costs under the Guaranty, but Defendant maintains that Plaintiff is not entitled to any attorneys' fees or costs associated with "time spent assessing and pursuing its claims against the American Companies," presumably under the Loan Agreement. Doc. No. 120 at 2-4.[4] With respect to the hourly rates requested, Defendant argues that Plaintiff has failed to show that the hourly rates reflect the prevailing market rate in this community. Doc. No. 120 at 5. With respect to the number of hours, Defendant contends that an unspecified number of entries relate only to work performed in prosecuting Plaintiff's claim against Defendant Robert Dello Russo and Plaintiff's actions taken with respect to the American Companies. Doc. No. 120 at 6.[5] Defendant does not state what amount of attorneys' fees should be awarded, but generally argues that the Court should deny the Motion with respect to the amount Plaintiff requests. Doc. No. 120 at 6. Defendant does not address the amount of costs requested. Doc. No. 120.

## II. **STANDARD OF REVIEW**.

In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are

---

[4] Defendant does not cite to any specific entries that he claims are not compensable, but relies on general argument. *Id*.

[5] Defendant does not cite to any specific time entries, but again relies on general argument. *Id*.

reasonable. *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

To meet the burden of proving hourly reasonable rate, the moving party must produce "satisfactory evidence" that the hourly rate being requested is in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id.* at 1299. This Court may also "award attorney's fees based solely on affidavits in the record." *Id.* at 1303. In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *See Norman*, 836 F.2d at 1303; *Loranger*, 10 F.3d at 782.

When submitting the hours reasonably expended by the moving party's attorney, the moving party must exercise "billing judgment." *Hensley*, 461 U.S. at 434. This requires the moving party to exclude hours that are "redundant, excessive, or otherwise unnecessary." *Id.* The court will excise redundant, excessive or unnecessary hours when a party fails to. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In proving reasonable hours, a movant "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise" concerning those hours that should be excluded. *Barnes*, 168 F.3d at 428. A fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal. *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997).

5

## III.     ANALYSIS.

### A.     Hourly Rates.

As set forth above, the Motion and attached affidavits provide that Plaintiff agreed to pay counsel a flat rate of $350.00 per hour for all attorney work. *See* Doc. Nos. 113 at 5-6; 114 at 4 ¶¶ 6-7; 115 at 4-5. *See also* supra at pp. 2-3. Therefore, Plaintiff is requesting that Court approve the flat rate of $350.00 per hour for all attorney work, except for Ms. Matthews' work, for which Plaintiff requests approval of a rate of $260.00 per hour. *Id.*[6] Defendant generally contends that Plaintiff has failed to show that the hourly rates requested reflect the prevailing market rate in this community. Doc. No. 120 at 5. However, the hourly rate that a client actually pays its attorney "is powerful, and perhaps the best . . . evidence of the prevailing market rate for the attorney's services because 'that is most likely to be what [the attorney] is paid as determined by supply and demand.'" *Merrit v. Lake Jovita Homeowner's Association, Inc.*, Case No.8:08-cv-98-T-27EAJ, 2010 WL 627531 at *2 (M.D. Fla. Feb, 23, 2010) (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000)). Thus, because Plaintiff has shown that it agreed to and paid counsel the rates requested, Plaintiff has produced satisfactory evidence that the requested hourly rates are in line with the prevailing market rate in this community. *Norman*, 836 F.2d at 1303. Accordingly, it is recommended that the Court find that the hourly rates requested by Plaintiff are reasonable.

### B.     Number of Hours.

Plaintiff requests that the Court find that 119.7 hours were reasonably expended in this case. Doc. Nos. 113 at 9; 114 at 7; 115 at 6. *See also* supra pp. 2-3. Defendant generally contends that some of the time entries reflect work that was performed in the pursuit of and the

---

[6] Plaintiff also requests that the Court approve an hourly rate of $160.00 per hour for 0.6 hours of paralegal time. *Id.*

6

disposition of the American Companies, their assets, and the Loan Agreement rather than the prosecution of the Guaranty and, therefore, are not compensable. Doc. No. 120 at 2-4, 6.[7]

On August 20, 2009, Defendant executed the Guaranty to secure the payment obligations arising under the American Companies' Loan Agreement. Doc. Nos. 1-9; 23 at ¶ 11; 40 at 2. On March 16, 2011, after the American Companies defaulted on the Loan Agreement, Plaintiff served Defendant with a demand letter on the Guaranty. Doc. Nos. 1 at ¶ 20; 23 at ¶ 21; 40 at 3. On May 3, 2011, Plaintiff filed the Complaint. Doc. No. 1. In the Motion, Plaintiff requests attorneys' fees for the following time entries:

| Date | Attorney | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 12/23/10 | Reyen | .4 | $350 | $140 | Follow up issues [re] American Companies documents |
| 12/31/10 | Bass | .6 | $350 | $210[8] | Worked on issues with client [re] American Companies and other various documentation issues |
| 1/24/11 | Bass | .9 | $350 | $315 | Conferences on American Door Matter |
| 1/24/11 | Schueller | 1.1 | $350 | $385 | Review bankruptcy issues for American Door |
| 1/24/11 | Reyen | .2 | $350 | $70 | Conference call [re] American Door |
| 1/25/11 | Schueller | 1.2 | $350 | $420 | Outline strategies for American Door liquidation and discounted payoff or secured party sale |
| 1/25/11 | Bass | .3 | $350 | $105 | Worked on American Door issues |
| 1/27/11 | Palmer | .6 | $350 | $210 | Attended to foreclosure complaint and strategy for American Door |
| 1/31/11 | Reyen | .7 | $350 | $245 | Analysis of American Door documents for ROR letters, analysis of forbearance agreement, discussion with client [re] assignments and other outstanding issues |
| 1/31/11 | Bass | .2 | $350 | $70 | Email exchange with Focus [re] American Companies |

---

[7] *See also* Doc. No. 40 at 1-5 (discussing the facts related to the American Companies, the Guaranty, and the Loan Agreement).

[8] In the time sheet, Plaintiff miscalculates the amount of attorneys' fees for this entry. Doc. No. 114-2 at 1. The time sheet states that Ms. Bass performed 0.6 hours of work, which at an hourly rate of $350 would equal $210.00 in attorneys' fees. *Id*. However, the time sheet states that counsel charged Plaintiff only $156.00 for this time entry. *Id*. As set forth below, the undersigned is recommending that the Court find all of the time entries detailed in the table are not compensable. Accordingly, no further adjustment is necessary.

| 3/3/11 | Bass | .2 | $350 | $70 | Worked on Focus retention for American Door |
|---|---|---|---|---|---|
| 3/7/11 | Bass | .3 | $350 | $105 | Worked on American Door issues |
| 3/8/11 | Bass | .3 | $350 | $105 | Reviewed landlord waivers in American Door |
| 3/8/11 | Bass | .9 | $350 | $315 | Conference with client on sale of American Door note |
| 3/10/11 | Bass | .4 | $350 | $140 | Research and advise with respect to perfection of security interest in American Door automobiles. Conference with Gerry on outstanding issues |
| 3/11/11 | Bass | 1.6 | $350 | $560 | Worked on American Door issues. Several conferences with client. |
| 3/13/11 | Bass | 1.7 | $350 | $595 | Conference with counsel for Blue Wolf. Research UCC sale options. |
| 3/14/11 | Bass | 2.4 | $350 | $840 | Worked on Blue Wolf deal |
| 3/14/11 | Reyen | 7.7 | $350 | $2,695 | Research strict foreclosure in Florida, analysis of American Companies loan documents in preparation for preparation for proposed deal, communications with buyer's counsel, drafting UCC disposition notices, <u>and drafting demand letter for guarantor</u> |
| 3/15/11 | Reyen | 1 | $350 | $350 | Continue drafting UCC disposition notices of American Companies |
| 3/15/11 | Bass | 3.8 | $350 | $1,330 | Worked on structure and documentation of Blue Wolf deal |
| 3/16/11 | Bass | 1.9 | $350 | $665 | Worked on Blue Wolf closing issues |
| 3/17/11 | Bass | 2.7 | $350 | $945 | Worked on Blue Wolf deal |
| 3/18/11 | Bass | 4.6 | $350 | $1,610 | Worked on American Door deal |
| 3/18/11 | Reyen | .4 | $350 | $140 | Communications regarding proposed asset purchase agreement |
| 3/21/11 | Reyen | .3 | $350 | $105 | Communications with Fifth Third [re] need to assign most up to date version of note |
| 3/21/11 | Bass | 3.8 | $350 | $1,330 | Work on finalization of Blue Wolf deal |
| 3/22/11 | Bass | .2 | $350 | $70 | Continued monitoring American Door situation |
| 3/22/11 | Reyen | .1 | $350 | $35 | Follow up regarding loan documents |
| 3/23/11 | Bass | .3 | $350 | $105 | Worked on final American Door closing details including collecting final signature |
| 3/25/11 | Bass | .3 | $350 | $105 | Worked on details of American Door closing |
| 3/25/11 | Bass | .3 | $350 | $<u>105</u> | Worked on consultations on American Door |
| **TOTAL** | | **41.4** | | **$14,490.00** | |

Doc. No. 114-2 at 1-3 (emphasis added). The above time entries reflect work performed regarding the Loan Agreement with the American Companies, their default, and Plaintiff's efforts to sell the collateral. *Id.*[9]

The Guaranty, executed by the Defendant, the breach of which resulted in the judgment of $500,000.00 against the Defendant, provides the following:

> 1. Guaranty. (a) The Guarantor . . . hereby absolutely, unconditionally, irrevocably, and continually guarantees to the Lenders, the full . . . payment and performance when due . . . of any and all debts, indebtedness, obligations, and the Liabilities (of any and every kind or nature) of the [American Companies] relating to the [Loan Agreement] including, without limitation:
>
> (i) payments of principal, interest, default interest, and late charges, and all other monies, payments, premiums, fees, charges, costs, expenses or other amounts relating to the [Loan Agreement]; and
>
> (ii) the performance of any and all other terms, covenants, conditions, warranties, representations, indemnities, liabilities, and other obligations now or hereafter made or undertaken by the [American Companies] relating to the [Loan Agreement].
>
> Notwithstanding anything herein to the contrary, <u>the Guarantor's liability under this Section . . . shall be limited to the amount of $500,000</u>. If, after the Agent give the Guarantor written demand for payment hereunder, any payments are made by persons other than the Guarantor, or any recoveries are received from any source (including collateral), such payments and recoveries shall not be counted for purposes of calculating the maximum liability pursuant to this Section. . . .

---

[9] One entry from March 14, 2011, does reflect work relating to drafting the demand letter to the guarantors. Doc. No. 114-2 at 2. However, the entry is for 7.7 hours and also reflects work which is solely related to the American Companies and the proposed sale of the collateral. *Id.* Based on the entry, the undersigned cannot distinguish how much time was spent drafting the demand letter to the guarantor or which guarantor the demand letter was directed to. *Id.* Accordingly, the undersigned recommends the entire time entry be rejected. *Id.*

Doc. No. 114-1 at 1-2 (emphasis added).  Thus, the Guaranty states that the Defendant guarantees all payments, costs, expenses, and performance of the American Companies under the terms of the Loan Agreement, but the Defendant's liability for the American Companies' obligations under the Loan Agreement is capped at $500,000.00. *Id.*

With respect to attorneys' fees and costs, the Guaranty provides:

> 7. <u>Enforcement Costs</u>.  <u>If:  (a) this Guaranty is placed in the hands of an attorney for collection or enforcement</u> or is collected or enforced through any legal proceeding; (b) an attorney is retained to represent the Agent or the Lenders in any litigation, contest, suit, proceeding, or dispute, or to commence, defend or intervene or to take any action with respect to the Guarantor or joined by the Guarantor (whether or not any litigation, suit, contest, or proceeding is actually commenced) in any way relating to this Guaranty, any property subject to this Guaranty, or any other of the Liabilities, including to protect or enforce the Loan Agreement or any Financing Agreement or with respect to any bankruptcy, reorganization, receivership, or other proceeding affecting creditor's rights and involving a claim under this Guaranty; or (c) an attorney is retained to negotiate, prepare, execute, deliver, amend, or administer this Guaranty, <u>then the Guarantor shall pay to the Agent and the Lenders upon demand all reasonable attorneys' fees and all costs and expenses</u>, including court costs, filing fees, recording costs, expenses of foreclosure, and all other costs and expenses <u>incurred in connection therewith</u> (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due under this Guaranty, <u>which obligation shall not be subject to any of the limitation set forth in Section 1</u>.

Doc. No. 114-1 at 5 (emphasis added).  Section 7(a) allows for the recovery of attorneys' fees and costs where, as is the case here, if the Guaranty is given to an attorney for collection or enforcement proceedings.  Doc. No. 114-1 at 5 ¶ 7(a).  Section 7(a) of the Guaranty only permits an award of attorneys' fees and costs related to any attempt to collect or enforce the terms of the Guaranty.  Doc. No. 114-1 at 5 ¶ 7(a).  Attorneys' fees and costs for enforcement of the Guaranty

are compensable under Section 7(a) and are not subject to the $500,000.00 limit of liability contained in Section I of the Guaranty. Doc. N. 114-1 at 5 ¶ 7.

The complaint and judgment against Defendant only involves a claim of breach of the Guaranty. Doc. No. 1 at 6-7. Section 7(a) of the Guaranty only allows recovery for fees and costs relating to enforcement of the Guaranty. Doc. No. 114-1 at 5. Accordingly, it is recommended that the Court find that all work detailed in the table above (totaling $14,490.00) related to the American Companies, the Loan Agreement, and the sale of the collateral; all of which occurred before the complaint was filed, is not compensable.[10]

### C. Total Amount of Attorneys' Fees.

By removing 41.4 hours of work at an hourly rate of $350.00 per hour, the total amount of attorneys' fees compensable under the Guaranty is $24,960.00 ($39,450.00 - $14,490.00). Accordingly, it is recommended that the Court award Plaintiff $24,960.00 in reasonable attorneys' fees under the Guaranty.

### D. Costs.

Plaintiff requests at $725.00 in costs under Section 1920 for the filing fee and costs of service of process. Doc. No. 113 at 10. Those costs are clearly recoverable under 28 U.S.C. § 1920. *Id*. The remaining costs, totaling $544.42, relate to the American Companies and the assignment of the Loan Agreement to Plaintiff. *See* Doc. No. 114-2 at 8. Thus, those costs are not recoverable under the Guaranty. *See* supra pp. 9-11. Accordingly, it is recommended that the Court award Plaintiff costs in the amount of $725.00.

---

[10] While certain time entries dated after the Complaint was filed also state that they are related to the American Companies, the Defendant has failed to cite to any specific entries which it argues are not compensable. *See* Doc. Nos. 114-2 at 1-7; 120 at 2-4, 6. Accordingly, the undersigned recommends that the Court find only those entries detailed in the above table are not compensable. *See Gray*, 125 F.3d at 1387 (A fee opponent's failure to explain with specificity the particular hours he views as non-compensable is generally fatal).

## IV.   CONCLUSION.

Based on the forgoing, the undersigned finds that Plaintiff should be awarded $25,685.00, representing $24,960.00 in attorneys' fees and $725.00 in costs. Accordingly, it is **RECOMMENDED** that the Court:

1) **GRANT in part and DENY in part** the Motion (Doc. No. 113);

2) Award Plaintiff $25,685.00 in attorneys' fees and costs; and

3) Direct the Clerk to enter a separate judgment in favor of Plaintiff and against Defendant in the amount of $25,685.00.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** at Orlando, Florida on September 12, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record